**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| TRAVIS L. WATSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:17cv934 |
| | ) |
| DETECTIVE MCPHATTER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendants' Motion to Dismiss" (Docket Entry 12) (the "Dismissal Motion"). For the reasons that follow, the Court should deny the Dismissal Motion.

**BACKGROUND**

Alleging violations of his rights under the Fourth Amendment, Plaintiff Travis L. Watson initiated this pro se action against Detective McPhatter, Detective Altizer, and Detective Ludemann (collectively, the "Defendants") pursuant to 42 U.S.C. § 1983. (Docket Entry 2 (the "Complaint") at 2-3.)[1] More specifically, Plaintiff's Complaint asserts that Defendants conducted an "illegal search and seizure" (id. at 3) at his apartment around 8:35 a.m. on December 29, 2016 (id. at 4). According to the Complaint:

---

1 Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

"[He] was arrested outside of [his] residence," and, "[a]fter [he] was handcuffed, [Defendants] immediately enter[ed] the residence without a search warrant or probable cause or exigent circumstances" (id. at 6) or "consent to enter or search" (id. at 5). His "fianc[é]e (Carla Morris) and [his] mother (Judy West) also were present" during this event. (Id.) "Detective Matthews stood outside the door of the residence while [Defendants] detained Carla Morris inside the apartment. Judy West was outside with [Plaintiff] until officers escorted [him] away . . . at approximately 8:40 a.m." (Id.) Defendants' "illegal search" resulted in the discovery and seizure of a firearm (id. at 6) and caused, inter alia, "[e]motional and mental suffering" and "[j]ob loss" (id. at 5).

Thereafter, Defendants moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"). (See Docket Entry 12 at 1.) In particular, Defendants maintain that Plaintiff's allegations that "there was no probable cause or exigent circumstances are legal conclusions" and "provide no basis for this [C]ourt to draw [the] reasonable inference that [Defendants] are liable for to [sic] [P]laintiff for a violation of the Fourth Amendment." (Docket Entry 15 at 4.) Defendants further assert that qualified immunity protects them from liability because "Plaintiff has failed to provide any facts in the [C]omplaint to show that his rights were clearly established

at the time of the alleged illegal search such that the three officers should have known that their actions were illegal." (Id. at 6.)

In response to the Dismissal Motion, Plaintiff filed "Plaintiff's Answer To Defendant's Motion To Dismiss (Motion To Deny Dismissal)." (Docket Entry 19 (the "Supplement") at 1.) Filed within twenty-one days of the Dismissal Motion's filing (compare id. at 7, with Docket Entry 12 at 2), the Supplement contains additional factual allegations and "is supported by the affidavits of Judy West and Carla Morris" (Docket Entry 19 at 2), as well as other exhibits (see, e.g., id.; Docket Entry 19-4 at 1). (See Docket Entry 19 at 1-6.) The Rules permit a party to "amend its pleading once as a matter of course within," as relevant here, "21 days after service of a motion under Rule 12(b)," Fed. R. Civ. P. 15(a)(1)(B). Defendants treat the Supplement as amending Plaintiff's Complaint (see, e.g., Docket Entry 21 at 1-3 (discussing allegations from the Supplement and its exhibits)), and, in the absence of an objection to this interpretation from Plaintiff (see Docket Entries dated May 7, 2018, to present), this Opinion does the same. As relevant to the Dismissal Motion, the Supplement alleges that:[2]

---

2 This recitation includes only those portions of the Supplement's exhibits that Plaintiff adopted in his Supplement. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167-68 (4th Cir. 2016).

Defendants, in contravention of the Fourth Amendment, "violate[d] and disregard[ed Plaintiff's] expectation of privacy in" the apartment where he "resided at the time of the violation." (Docket Entry 19 at 1.) In particular, Defendants violated Plaintiff's fourth-amendment rights "when after arrest (outside of [P]laintiff's residence) [D]efendants entered, searched, and seized a firearm without getting advance judicial approval for the search and seizure through the warrant procedure." (Id.) "Defendants, after non-consented entry (see Detective Altizer's body cam on Dec. 29, 2016 — day of arrest) did also conduct an illegal protective sweep in which they used to gain entry," in violation of, inter alia, the Fourth and Fourteenth Amendments. (Id. at 1-2.)

More specifically, "[t]he police came to the [residence's] door early on December 29, 2016. After they identified themselves, [Plaintiff] came to the door with his hands up." (Docket Entry 19-1, ¶ 3.) "[Plaintiff] came out of the apartment door with his hands up. The police grabbed him as soon as he was about two feet (2') outside of the apartment." (Docket Entry 19-2, ¶ 3; see also Docket Entry 19-1, ¶ 3 ("The police grabbed him and took him outside the apartment.").) "As soon as they grabbed [Plaintiff], approximately three (3) police officers went into the apartment. Two of the police officers stayed in the apartment and one left." (Docket Entry 19-2, ¶ 4; accord Docket Entry 19-1, ¶ 4.) The police entered "right after Officer J.L. Matthews cleared the

4

residence from the front door . . . . There was no reports or indications that the officers felt threatened or that they had any basis to believe that evidence was being destroyed." (Docket Entry 19 at 2.)

"After the entry (without a search warrant) the search of [the] residence did not end." (Id.) "Detective Altizer physically remained in the residence" and "[t]he police kept the residence door open" (id.) with another officer standing near the apartment door "looking at the living room and what was in the living room" (Docket Entry 19-1, ¶ 9), for approximately two hours (see id., ¶ 9; Docket Entry 19 at 3). The officers ordered Carla Morris "to remain on the couch and not to move" and "did not allow her to answer her phone." (Docket Entry 19 at 2.) For "a long time" (Docket Entry 19-1, ¶ 6; Docket Entry 19-2, ¶ 6), police officers detained Carla Morris on the couch and refused to let Judy West enter the residence. (Docket Entry 19-1, ¶¶ 5, 8; Docket Entry 19-2, ¶ 5.) "[D]uring this time," Defendants "look[ed] through papers inside the apartment" (Docket Entry 19-2, ¶ 7) and "searched through the mail of the residence" (Docket Entry 19 at 2; accord Docket Entry 19-1, ¶ 4). "After the search had been ongoing for (2) two hours (see search warrant for verification of the execution of the warrant which was at 10:30 a.m. Search began at 8:30 a.m.), Detective W.C. Tyndall obtained a search warrant to

5

search the residence and [P]laintiff's 1997 Acura from Magistrate Watts at 9:30 a.m. on December 29, 2016." (Docket Entry 19 at 3.)

## DISCUSSION

### I. Motion to Dismiss Standards

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). Moreover, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); but see Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine [the] requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. Id. (citing Twombly, 550 U.S. at 556). The complaint need not contain detailed factual recitations, but must provide "the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

**II. Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. As the Supreme Court has explained, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (internal quotation marks omitted). As such, "[i]t is a basic principle of

7

Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980) (internal quotation marks omitted). Nevertheless, "this presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Kentucky v. King, 563 U.S. 452, 459 (2011) (internal quotation marks and brackets omitted). Accordingly, the Supreme Court has specified certain "narrow and well-delineated exceptions to the warrant requirement," Flippo v. West Va., 528 U.S. 11, 13 (1999), including "a well-settled protective sweep exception to the warrant requirement, as enunciated by the Supreme Court in *Maryland v. Buie*, 494 U.S. 325 (1990)," United States v. Jones, 667 F.3d 477, 482 (4th Cir. 2012) (parallel citations omitted).

As the Supreme Court has explained, "[a] 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Buie, 494 U.S. at 327. In such circumstances, the Fourth Amendment permits a protective sweep "if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual

8

posing a danger to the officer or others." Id. (internal quotation marks, brackets, and citation omitted). Importantly, though, the Supreme Court has

> emphasize[d] that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

Id. at 335-36 (footnote omitted); see also id. at 335 n.3 ("A protective sweep is without question a 'search,' as was the patdown in Terry[ v. Ohio, 392 U.S. 1, 16 (1968)]; they are permissible on less than probable cause only because they are limited to that which is necessary to protect the safety of officers and others."). Finally, a protective sweep remains permissible even if police arrest an individual "just outside the residence." Jones, 667 F.3d at 485 n.10.

Here, Defendants arrested Plaintiff within two feet of his apartment door, in his fiancée's presence. (See generally Docket Entry 19-1; Docket Entry 19-2, ¶¶ 2, 3, 5.) Regardless of whether those circumstances justify a protective sweep (compare Docket Entry 21 at 4, with Docket Entry 19 at 5), Plaintiff alleges that Defendants' actions "exceeded [the] allowable scope" of "a lawful protective sweep" (Docket Entry 19 at 5). In particular, Plaintiff alleges that "[D]efendants[] did not limit themselves to searching

9

for persons. The officers looked through papers while in the course of the protective sweep. In addition, [D]efendants grossly exceeded the allowable duration of a protective sweep," as "the sweep/search lasted for (2) two hours before Detective Tyndall came with a warrant to search." (Id.)

These allegations plausibly support a fourth-amendment claim. As the Fourth Circuit has observed:

> A protective sweep is limited to a cursory inspection of those spaces where a person may be found and should last no longer than it takes to complete the arrest and depart the premises. We have distilled this language to indicate that the sweep may last no longer than needed to dispel the reasonable suspicion of danger and no longer than needed to arrest the suspect and leave the premises.

United States v. Laudermilt, 677 F.3d 605, 610 (4th Cir. 2012) (internal quotation marks and citation omitted); see also United States v. Watson, 703 F.3d 684, 693 (4th Cir. 2013) ("Thus, the extent of any Fourth Amendment intrusion undertaken for purposes of officer safety must be '*no more than necessary* to protect the officer from harm.'" (emphasis in original) (quoting Buie, 494 U.S. at 333)). Here, Plaintiff alleges that Defendants arrested him around 8:35 a.m. (see Docket Entry 2 at 4) and "escorted [him] away . . . at approximately 8:40 a.m." (id. at 5). Yet, Defendants allegedly remained in Plaintiff's residence for nearly two more hours, during which time "[t]hey looked through some mail in the living room" (Docket Entry 19-1, ¶ 4) and "were looking through papers inside the apartment" (Docket Entry 19-2, ¶ 7). Such

10

actions exceed the bounds of a legitimate protective sweep. See Buie, 494 U.S. at 335-36; see also Chimel v. California, 395 U.S. 752, 767 (1969) ("After arresting a man in his house, to rummage at will among his papers in search of whatever will convict him, appears to us to be indistinguishable from what might be done under a general warrant; indeed, the warrant would give more protection, for presumably it must be issued by a magistrate." (internal quotation marks omitted)). Plaintiff therefore states a plausible fourth-amendment claim against Defendants.[3]

Defendants, however, maintain that qualified immunity protects them from Plaintiff's claim. (See Docket Entry 15 at 5-7; Docket Entry 21 at 7.) "To establish a qualified-immunity defense, a public official must demonstrate that (1) a plaintiff has not

---

3  Relying on Illinois v. McArthur, 531 U.S. 326 (2001), Defendants also assert that "the question presented by Plaintiff's response and his attachments to the response, also raised the question of whether the officers could enter the apartment to secure the scene for the execution of the search warrant" (Docket Entry 21 at 4-5) given that, upon learning of Defendants' arrest of Plaintiff at 8:56 a.m., "Detective Tyndall informed the officers he was en route with a search warrant for the Plaintiff's apartment and vehicle" (id. at 3). This argument misses the mark. To begin, it overlooks Defendants' actions in the sixteen-minute interval between "escorting [Plaintiff] away" (Docket Entry 2 at 5) and learning about the (not-yet-issued) search warrant (see Docket Entry 19 at 3, 6). Moreover, as Defendants concede, "[t]he question presented to the [Supreme] Court [in McArthur] was whether the detention while waiting for an officer to obtain and deliver the search warrant was unreasonable." (Docket Entry 21 at 5.) Here, however, Plaintiff asserts no claim on behalf of Carla Morris regarding the legality her detention. (See Docket Entry 19 at 4 ("Ms. Morris is only a witness for the purposes of this civil action.").) Accordingly, Defendants' McArthur contentions fail to justify dismissal of Plaintiff's claim.

11

alleged or shown facts that make out a violation of a constitutional right, or that (2) the right at issue was not 'clearly established' at the time of its alleged violation." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 395-96 (4th Cir. 2014) (internal quotation marks and brackets omitted). "A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but, . . . when asserted at this early stage in the proceedings, the defense faces a formidable hurdle and is usually not successful." Id. at 396 (internal quotation marks omitted). "This is so because dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is *plausible* on its face." Id. (emphasis in original).

Here, Defendants contend that "Plaintiff . . . failed to provide facts which would support an argument that the officers violated clearly established statutory or constitutional rights of which a reasonable person would have known." (Docket Entry 21 at 7; accord Docket Entry 15 at 6.) However, "[i]t is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (ellipsis in original) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). It remains equally well-established that "a protective sweep, aimed at protecting the

12

arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found" and may last "no longer than it takes to complete the arrest and depart the premises." Buie, 494 U.S. at 335-36.

Plaintiff alleges that Defendants engaged in a search of his apartment, including his mail and papers, long after they arrested and removed him from the premises. Accepted as true, such allegations "show that [Plaintiff's] rights were clearly established at the time of the alleged illegal search such that the three officers should have known that their actions were illegal" (Docket Entry 15 at 6). The Court should therefore reject Defendants' qualified immunity argument at this stage of the proceedings. See Owens, 767 F.3d at 396.

## CONCLUSION

Defendants failed to justify Rule 12(b)(6) dismissal.

**IT IS THEREFORE RECOMMENDED** that the Dismissal Motion (Docket Entry 12) be denied.

This 29th day of January, 2019.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**