# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TRAVIS L. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV934 |
| | ) | |
| DETECTIVE MCPHATTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Motion for Appointment of Counsel (Docket Entry 83 (the "instant Motion")), as well as his Counsel Request (Docket Entry 127 (the "instant Request")). Because the record does not reflect exceptional circumstances that would warrant the Court attempting to tap the limited pro bono resources available to it on Plaintiff's behalf (but instead reveals good reasons not to make any such attempt), the Court will deny the instant Motion and the instant Request.[1]

---

[1] In regards to "motions for appointment of counsel," Handy v. City of Sheridan, 636 F. App'x 728, 733 (10th Cir. 2016), "[m]agistrate judges have authority to issue final decisions on such nondispositional matters under 28 U.S.C. § 636(b)(1)(A), subject to review by the district court," Handy, 636 F. App'x at 733; accord, e.g., Cordero v. Kelley, Civ. No. 17-1596, 2021 WL 351361, at *1 (D.N.J. Feb. 2, 2021) (unpublished); Hampton v. Peeples, No. CV614-104, 2015 WL 4112435, at *1 (S.D. Ga. July 7, 2015) (unpublished); Campbell v. Mitchell, No. 14-2257, 2014 WL 4929292, at *2 (W.D. Tenn. Oct. 1, 2014) (unpublished); Johnson v. Honda, No. 3:13CV485, 2014 WL 117230, at *1-2 (W.D.N.C. Jan. 10, 2014) (unpublished); Sanzone v. Goode, No. 10CV4431, 2010 WL 5152303, at *1 n.1 (E.D.N.Y. Dec. 13, 2010) (unpublished); Daniels v. Ruan, No. 05CV922, 2007 WL 1125683, at *1 (S.D. Cal. Apr. 16, 2007) (unpublished); see also 28 U.S.C. § 636(b)(1)(A) (authorizing
(continued...)

INTRODUCTION

The Court (per the undersigned United States Magistrate Judge) permitted Plaintiff to proceed as a pauper in this action, which he brought under 42 U.S.C. § 1983. (See Docket Entry 3 at 1; see also Docket Entry 2 at 2-3 (naming three detectives employed by City of Greensboro as Defendants).) After discovery closed, the Court (per United States District Judge Loretta C. Biggs) entered summary judgment for Defendants on all of the claims in this action, except as "to Detective Altizer on Plaintiff's fourth-amendment claim for illegal searches of his mail." (Docket Entry 53 at 1; see also Docket Entry 61 at 2 (dismissing Plaintiff's interlocutory appeal of that order).) The Clerk subsequently set a trial date of May 2, 2022. (See Docket Entry 81 at 1.)

Plaintiff, in turn, filed the instant Motion, pursuant to "28 U.S.C. [§] 1915(e)(1)" (Docket Entry 83 at 1), "mov[ing] the [C]ourt for an order appointing counsel in this case" (id.), based on this showing:

> 1. [Plaintiff] is currently unable to afford counsel. He has requested leave to proceed In Forma Pauperis.

---

[1](...continued)
magistrate judges "to hear and determine any pretrial matter pending before the court, except" eight categories of motions, which do not include motions for appointment of counsel, and district judges to "reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); Grooms v. Thomas, No. 1:19CV396, 2020 WL 377948, at *1 (M.D.N.C. Jan. 23, 2020) (unpublished) (Osteen, J.) ("The motion to appoint counsel is a pretrial matter, not dispositive of [the p]etitioner's claims.").

> 2. Issues involved in [Plaintiff's] case are complex and require the expert opinion and analytical skills of a Fraud Analyst and/or Counterfeit Document Analyst/Expert.
>
> 3. [Plaintiff] cannot currently afford to pay an expert.
>
> 4. A trial in this case will likely involve conflicting testimony and counsel would better enable [Plaintiff] in management of presenting his evidence and cross-examining witnesses.

(Id.; see also id. at 2 ("I have fraudulent and counterfeit documents in my possession that require an expert's examination for trial purposes.").) Detective Altizer responded (see Docket Entry 90) and Plaintiff replied (see Docket Entry 107).

A short time later, Plaintiff filed the instant Request, which (A) notes the pendency of the instant Motion "requesting counsel which would assist him in fraud analyzation, presenting evidence, and cross[-]examination of witnesses" (Docket Entry 127 at 1), and (B) "ask[s] the [C]ourt to extend counsel's services to also assist [Plaintiff] in formally bringing criminal charges against the state actors in this case that have wrongfully engaged in criminal misconduct, colluded, and conspired to defraud [Plaintiff] of his [c]onstitutional [r]ights and [o]bstruct[ed] [j]ustice in [c]overing it up" (id.; see also id. at 1-2 ("[Plaintiff] needs counsel's assistance in assigning criminal liability in reference to the fraudulent documents in his possession . . . and certain substances

that have been placed in [his] food and drink to prevent his voice from being heard on these matters.")).[2]

## DISCUSSION

The statute cited by Plaintiff as authority for the relief he has sought states: "The court <u>may request</u> an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1) (emphasis added). The language of that provision makes clear that "a plaintiff does not have an absolute right to appointment of counsel." <u>Miller v. Simmons</u>, 814 F.2d 962, 966 (4th Cir. 1987). In fact, in federal civil actions, "there is <u>no</u> statutory provision for <u>appointment</u> of counsel. The statute [in question] says that a judge may 'request' that an attorney represent a litigant and so [a motion for] 'appointment of counsel' is actually a polite way of saying that [a court should] call[] multiple attorneys in an effort to get one of them to take a case for no pay." <u>Gruenberg v. Gempeler</u>, 740 F. Supp. 2d 1018, 1020 n.1 (E.D. Wis. 2010) (emphasis

---

[2] Given the obvious frivolousness of the instant Request (detailed in the Discussion section that follows above), the Court has elected not to consider Detective Altizer's opposition (<u>see</u> Docket Entry 136) or to await any reply from Plaintiff. <u>See generally</u> <u>Kanu v. Siemens PLM</u>, No. 1:18CV38, 2019 WL 1090398, at *1 n.1 (S.D. Ohio Mar. 8, 2019) (unpublished) ("Based upon the frivolous nature of the motion, the undersigned finds no need to await any response by the [d]efendants prior to issuing this [recommendation]."), <u>recommendation adopted</u>, 2019 WL 4110434 (S.D. Ohio Aug. 29, 2019) (unpublished); <u>United States v. FloridaUCC, Inc.</u>, No. 4:09CV46, 2009 WL 1971428, at *8 (N.D. Fla. July 3, 2009) (unpublished) (observing that, where issues raised in motion "are frivolous[,] there is no need to await a response to the motion . . . before ruling on the motion").

added), aff'd, 697 F.3d 573 (7th Cir. 2012); see also Mallard v. United States Dist. Ct. for S.D. of Iowa, 490 U.S. 296, 310 (1989) (holding that provision now codified at Section 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel"); United States v. MacCollom, 426 U.S. 317, 321 (1976) (plurality) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress."); Evans v. Kuplinski, 713 F. App'x 167, 170 (4th Cir. 2017) ("A pro se prisoner does not have a general right to counsel in a [Section] 1983 action."); Taylor v. Pulliam, 679 F. App'x 264, 266 (4th Cir. 2017) ("[C]ivil litigants have no constitutional right to counsel . . . ."); Geter v. Taharra, 429 F. App'x 265, 266 (4th Cir. 2011) ("[T]here is no right to appointment of counsel in a civil case . . . ."); Valcarcel v. ABM Indus./Diversico Indus., 383 F. Supp. 3d 562, 564 (M.D.N.C. 2019) (Schroeder, C.J.) ("This is a civil case. As such, [the plaintiff] is not constitutionally entitled to appointment of counsel."); Clarke v. Blais, 473 F. Supp. 2d 124, 125 (D. Me. 2007) (recognizing that, under Section 1915(e)(1), "there are no funds appropriated to pay a lawyer or even to reimburse a lawyer's expenses"); Osipova v. Home Energy Assistance Program, No. 85CIV4498, 1985 WL 3956, at *2 (S.D.N.Y. Nov. 26, 1985) ("[N]o public funds are available to compensate court-appointed counsel in civil cases.").

-5-

Ultimately, judicial solicitation of the bar for free legal representation for a pro se party remains "a matter within the discretion of the [] Court. It is a privilege and not a right." Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968). In delineating the scope of that discretion, the United States Court of Appeals for the Fourth Circuit has held that a pro se party "must show that his [or her] case is one with exceptional circumstances." Miller, 814 F.2d at 966. "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds, Mallard, 490 U.S. at 300 & n.2. More pointedly, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

Here (as noted in the Introduction), a trial will occur on Plaintiff's one claim that survived summary judgment, and the Court often looks to its Pro Bono Representation Program ("PBR Program") "where summary judgment has been denied and the case is set for trial," Amended Standing Order No. 6 at 1 (M.D.N.C. Nov. 23, 2016); however, if the bare conclusion that record evidence "technically put a fact in issue and suffice[d] to avert summary judgment[] require[s] appointment of an attorney under § 1915[(e)(1)], the demand for such representation could be overwhelming," Cooper v. A.

-6-

Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989) (internal quotation marks omitted); see also Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014) ("[T]here are too many indigent litigants and too few lawyers willing and able to volunteer for these cases."); McLeod v. Henderson, No. 98-1534-CIV-T-17A, 1999 WL 1427749, at *1 (M.D. Fla. Dec. 28, 1999) (unpublished) ("The number of volunteer lawyers willing to accept appointment in such cases on a pro bono publico basis is limited." (italics omitted)). Accordingly, consistent with Section 1915(e)(1)'s plain language and the foregoing Fourth Circuit rulings, in utilizing the PBR Program, the Court retains "absolute discretion in making a determination of whether exceptional circumstances exist and whether appointment of a pro bono attorney is appropriate." Amended Standing Order No. 6 at 1; see also Osipova, 1985 WL 3956, at *2 ("This [c]ourt is favored by a pro bono panel of attorneys who are able to volunteer limited amounts of their time[,] but the judges exercise a necessary discretion in referring cases to the panel . . . ." (underscoring omitted)).

Furthermore, on multiple occasions, the Fourth Circuit has upheld denials of requests for counsel under Section 1915(e)(1) in cases that proceeded to trial, even when the pro se plaintiffs' errant approach to trial-related matters (which they well might have altered with the aid/advice of counsel) appeared to have compromised their cases. See Underwood v. Beavers, 711 F. App'x

-7-

122, 123 (4th Cir. 2017) ("The record establishes that [the plaintiff] was capable of adequately presenting his claims, so the denial of his motions to appoint counsel was not an abuse of discretion. Next, although [the plaintiff] arguably challenges the jury verdict, he did not file a postverdict motion pursuant to Fed. R. Civ. P. 50 or 59(a) within 28 days of the judgment. Having failed to file such a motion, [the plaintiff's] challenge to the jury verdict is foreclosed."); Clary v. Harper, 694 F. App'x 913, 916-17 (4th Cir. 2017) ("[The plaintiff] asserts that the district court erred in denying him counsel, and he claims that, had he been provided with an attorney, . . . he would have prevailed at trial. . . . [T]he district court did not abuse its discretion in failing to appoint counsel for [the plaintiff]. . . . Regarding his trial, [the plaintiff's] own statements that [the defendant] meant [the plaintiff] no harm were fatal to his claim that [the defendant] was deliberately indifferent to [the plaintiff's] safety."); Taylor, 679 F. App'x at 266 (holding that "record establishes that [the plaintiff] was capable of adequately presenting his claims, and [] therefore conclud[ing] that the district court did not abuse its discretion in denying his motion to appoint counsel," while also affirming district court's decision "not [to] allow[ the plaintiff] to present photos or witnesses to the jury," because "[he] failed to disclose the evidence prior to trial" and "failed to present a witness list prior to trial").

-8-

Simply put, the mere fact that this case will proceed to trial on a single claim against a single Defendant and that Plaintiff, like "[a]lmost everyone[,] would benefit from having a lawyer," Olson, 750 F.3d at 711; see also Joe v. Funderburk, Civ. No. 8:06-119, 2006 WL 2707011, at *1 (D.S.C. Sept. 18, 2006) (unpublished) ("[The p]laintiff cites that he is unable to afford counsel . . . [and] that he has . . . limited knowledge of the law . . . . Almost every prisoner bringing a [Section] 1983 claim would be able to cite the same circumstances . . . so the [c]ourt can hardly consider these circumstances to be exceptional."), aff'd, 215 F. App'x 307 (4th Cir. 2007), does not compel the Court to endeavor to find counsel willing to represent Plaintiff for free, particularly given the relatively simple nature of the claim left for trial and his proven ability to present that claim. Regarding the first of those two considerations, although the instant Motion baldly asserts that "[i]ssues involved in [Plaintiff's] case are complex" (Docket Entry 83 at 1), as well as that "[a] trial in this case will likely involve conflicting testimony and counsel would better enable [Plaintiff] in management of presenting his evidence and cross-examining witnesses" (id.), the lone surviving claim turns on a very straight-forward "material factual dispute" (Docket Entry 46 at 34), i.e., "whether, without consent, Detective Altizer (twice) searched through Plaintiff's mail (A) after Plaintiff's removal from the scene, (B) after clearing the apartment for other

-9-

people, and (C) prior to the arrival of a search warrant" (id.; see also id. (observing that "resol[ution of that dispute] against Detective Altizer[] would support a finding that she violated the Fourth Amendment"). As to the second consideration, Plaintiff – after conducting discovery (see, e.g., Docket Entry 30 at 1-4 (Plaintiff's Interrogatories and Request for Production of Documents)) – lucidly argued in opposition to summary judgment (citing supporting evidence he had gathered) that "[c]onsent was given to sweep only but officers did not depart the residence. Scope of consent was exceeded because officers . . . search[ed] papers (see Judy West Affidavit and Carla Morris Affidavit) . . . ." (Docket Entry 42 at 4 (citing Docket Entries 19-1, 19-2); see also id. at 5 ("Defendants talk of securing the residence until Det. Tyndall obtained a search warrant (p[age] 8 of Defendants' motion) and yet Defendants had already initiated search and seizure as aforementioned." (citing Docket Entry 34 at 8)); Docket Entry 49 at 2 ("Ms. Morris had agreed that Detective Altizer could enter the apartment to speak with her and check the apartment to confirm that it remained empty (see Altizer video at 13:54; Docket Entry 43-1 at 15-16, 25, 44). No consent was given to search mail . . . . A search that exceeds the scope is invald [sic]." (misplaced closed parenthesis moved)), 4 ("After the sweep, Detective Altizer continued her presence with constant observation of the residence and . . . looked through [Plaintiff's] mail . . . .").)

Case 1:17-cv-00934-LCB-LPA   Document 142   Filed 02/11/22   Page 10 of 18

In other words, the sole claim for trial "is not extremely complex and [Plaintiff i]s able to adequately present his case, as demonstrated by his [prior filings on point]." Harden v. Green, 27 F. App'x 173, 175 (4th Cir. 2001); see also Braxton v. Harrah, No. 2:18CV585, 2020 WL 2820148, at *1 (S.D.W. Va. May 29, 2020) (unpublished) ("In this case, as demonstrated by the fact that [the p]laintiff's pro se complaint survived [dispositive] motions . . . and the fact that [he] is presently pursuing discovery . . ., [he] appears capable of prosecuting this action on his own behalf without the aid of counsel. Moreover, this action, which is based on an allegedly unlawful search warrant and the allegedly wrongful seizure of [the p]laintiff's property, is neither so legally nor factually complex as to constitute 'exceptional circumstances' warranting the appointment of counsel." (italics omitted)); Velasquez v. O'Keefe, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) ("While it is possible that there will be conflicting evidence requiring cross-examination at the trial of this matter, this factor alone is not determinative of a motion for appointment of counsel.").[3]

---

[3] Those considerations also materially distinguish this case from another in which the Fourth Circuit "f[ou]nd that the record present[ed] the rare exceptional circumstances that render [a] district court's denial of [a pro se plaintiff's] requests for counsel an abuse of discretion," Evans, 713 F. App'x at 168 (emphasis added). See id. at 170 ("[W]e find that exceptional circumstances exist here because (1) [the] claims implicate a complex . . . issue and (2) [the plaintiff] suffers from severe mental illness and was committed to a psychiatric facility . . . for the entirety of the litigation below." (emphasis added)).

-11-

Finally, Plaintiff's elaboration on the use to which he would put counsel confirms that, in this instance, "pro bono civil representation would not lead to a quicker and more just result by sharpening the issues and shaping examination," Securities & Exch. Comm'n v. Bennett, No. 8:17CV2453, 2021 WL 4421087, at *2 (D. Md. Sept. 27, 2021) (unpublished) (internal quotation marks omitted) (emphasis added); see also Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982) ("The district court should also consider whether the appointment of counsel would be a service to . . . the court and [the] defendant as well, by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination."). Specifically, according to the instant Motion, Plaintiff would direct counsel to obtain "the expert opinion and analytical skills of a Fraud Analyst and/or Counterfeit Document Analyst/Expert" (Docket Entry 83 at 1), as to "fraudulent and counterfeit documents in [his] possession that require an expert's examination for trial purposes" (id. at 2). Per Plaintiff's Reply, that analysis would bear not on the unlawful mail search claim set for trial, but instead his proposed new claims "that many N.C. state officials have committed criminal offenses including but not limited to [c]onspiracy, [f]raud, [c]ounterfeiting, [f]orgery, and [c]ontaminating [his] food to cause harm and obstruct justice in this case." (Docket Entry 107 at 1; see also id. at 2 ("These claims . . . have been pleaded into

-12-

this lawsuit through Motion [t]o Amend Pleading for Requested Relief and Supplementals." (referring to Docket Entries 79 and 100, respectively)).)[4] The Court (per the undersigned Magistrate Judge), however, rejected the injection of any such new claims into this case at this late stage, by "denying as futile [Plaintiff's] Motion to Amend Pleading for Requested Relief" (First Text Order dated Feb. 5, 2022 (addressing Docket Entry 79)), and "treating [his] Supplemental[] as a motion for leave to file a supplemental pleading . . . and denying [it] as futile" (Fifth Text Order dated Feb. 5, 2022 (internal lettering omitted) (addressing Docket Entry 100); see also First Text Order dated Feb. 4, 2022 ("denying as futile [Plaintiff's] Supplemental Motion and Proposed Injunction" (addressing Docket Entry 69)); Second Text Order dated Feb. 5, 2022 ("denying [Plaintiff's] Motion to Implead Participating Officers into this Case, [his] Motion to Implead Additional Defendant, [his] Motion to Implead Liable State Actors, and [his] Motion to Implead" (addressing Docket Entries 71, 76, 77, and 87, respectively)); Third Text Order dated Feb. 5, 2022 ("denying as futile [Plaintiff's] Request for Leave to File Supplemental Pleading" (internal brackets omitted) (addressing Docket Entry 88))). These facts weigh heavily against the instant Motion.

---

[4] The Reply also adverts to Plaintiff "ma[king] a claim and giv[ing n]otice of the [u]nconstitutionality of a common practice by the State of N.C." (Docket Entry 107 at 2; see also id. (denying "aware[ness] of the statute that applies to the pattern of practice and [stating that] counsel is needed on this complex issue")).

-13-

The instant Request veers even further afield, by "ask[ing] the [C]ourt to extend counsel's services to also assist [Plaintiff] in formally bringing criminal charges against the state actors in this case that have willfully engaged in criminal misconduct, colluded, and conspired to defraud [him] of his [c]onstitutional [r]ights and [o]bstruct[ed j]ustice in [c]overing it up." (Docket Entry 127 at 1; see also id. at 1-2 ("[Plaintiff] needs counsel's assistance in assigning criminal liability in reference to the fraudulent documents in his possession . . . and certain substances that have been placed in [his] food and drink to prevent his voice from being heard on these matters.").) Plaintiff's desire to convert (A) a civil trial on a single (relatively simple) claim against a solitary Defendant (employed by a municipality), into (B) a sweeping criminal inquisition about far-flung fraud and obstruction of justice via poisoning by a wide-array of state executive and judicial officials, could not possibly justify the Court's solicitation of free legal representation for Plaintiff, because – as explained in connection with the denial of his Motion for Quasi Criminal Proceeding (Docket Entry 72) – "'Plaintiff cannot bring criminal charges through a [Section] 1983 action'" (Third Text Order dated Feb. 4, 2022 (quoting Fiore v. Benfield, No. 1:15CV271, 2015 WL 5511156, at *2 (M.D.N.C. Sept. 16, 2015) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Oct. 7, 2015) (Biggs, J.))).

-14-

Plaintiff's trial-related filings similarly indicate that judicial efforts to find him pro bono counsel would not promote efficient resolution of the surviving claim, as they manifest an intent by Plaintiff to treat the trial as a platform to air other (ever-evolving) allegations. (See, e.g., Docket Entry 66 at 1-12 (devoting Trial Brief to "Issues Presented" of "1. Search Warrant Insufficient To Support Probable Cause For a Search Warrant and/or Search," "2. False Arrest and Imprisonment Without Probable Cause," "[3.] FRAUD, DECEPTION, PROCEDURE VIOLATIONS," "4. Fraud By Detective Tyndall In Obtaining of Search Warrant," and "5. Docket Sheet in this Case Does Not Reflect that Detective McPhatter was served with summons," rather than unlawful mail search claim); Docket Entry 89 at 1-14 (identifying and addressing as pertinent issues in "[A]mended Trial Brief [] to supercede and replace prior Trial Brief": "1. Malicious Arrest, Malicious Accusation, Illegal Search and Seizure, Fraudulent Investigation, Lack of Probable Cause, False Imprisonment [by] Greensboro Police Dep't," "2. False Imprisonment by the Guilford County Jail (GCJ) and the [State] Court," 3. False Imprisonment by the Dep't of Public Safety (DPS) prisons," "4. At Craven Correctional Institution, Officials Told [Plaintiff] That He Was A 'Parole Violator,'" "5. July 3, 2017[, Plaintiff] notifies the Guilford County Senior Resident judge of his Unlawful Imprisonment in the DPS," "6. D.A. Commits Fraud On The [State] Court[, Which] Denies Right To Counsel," "7. Post

Release Supervision and Parole Commission (PRSPC) Issue[s] A False and Fabricated Order With False Assertions[,] Fraud, Conspiracy," "8. The Chief Administrator of the PRSPC Straightens the Record," "9. Motion to Suppress Denied by Fraud[/]Conspiracy," "10. Guilford County Courts Falsify the Official Case Record of a Superior Court Judge's Judgment Order, And Thereby Violate The Orders Of The Court," and "11. [DPS] Prison Officials Intervene And Assert Themselves To Thrawt [sic] [Plaintiff's] Litigation And Case And To Intentionally Bring Him Harm").)

In light of Plaintiff's commitment to make his single-claim, single-Defendant trial a forum for voicing voluminous grievances against a multitude of alleged wrong-doers, asking an attorney to volunteer to assist Plaintiff with that trial would not serve the interests of justice, particularly because Plaintiff has demonstrated a penchant for improperly lashing out at anyone he perceives as an impediment to his objectives, as well as an intent to continue on that course during his trial (where any responsible pro bono counsel assigned to Plaintiff who declined to join a misguided mission would become a likely target of his ire). (See, e.g., Text Order dated Feb. 16, 2018 ("warning Plaintiff . . . that he must not make further frivolous allegations against employees of the Court," after he "irresponsibly suggested that 'someone [in the Clerk's Office wa]s purposely hindering his progress in these matters,'" when, "[i]n fact, the fault for any and all delays in

-16-

[his] receipt of mailings l[ay] exclusively with him, due to his failure to submit a properly[ ]captioned, timely notice of address change" (internal brackets omitted)); Docket Entry 129 at 1-2 (stating in "Notice: Fourth Circuit Courts Follow Suit With Obstructions In Post Conviction Proceedings" that "federal Fourth Circuit [c]ourts have contributed in depriving [Plaintiff] of his U.S. Constitutional rights by proffesional [sic] misconduct, failures to address motions and claims, denial of motions before receipt of supporting documents, judgments against the weight of the evidence, abuses of discretion, and departures from the accepted and usual course of judicial proceedings," that "certain federal officials wanted to sweep the state's fraud under a rug and pull the wool over [his] eyes," that the "bias[ed], unfair, unconstitutional, and unlawful approach to this case has exposed the good ole boy connection is very much alive and thriving in the Fourth Circuit [c]ourts," and that "[he] would like to reserve the right to amend his pleadings at trial, in voicing and showing in clear detail his post conviction experiences in this case within the Fourth Circuit [c]ourts," in order to "make [m]edia [h]eadline [n]ews and give the citizens a more accurately [sic] depiction of who they have placed in the seats that serve up Justice to our children, brothers, mothers, fathers, sisters, and close friends and relatives," as well as to "[l]et this trial serve to expose the corruption within the Fourth Circuit [c]ourts").)

Indeed, granting the instant Motion and/or instant Request likely would do harm, for reasons recognized decades ago:

> Volunteer lawyer time is a precious commodity. Courts are given a major role in its distribution. Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste.
>
> Available volunteer-lawyer time should not be allocated arbitrarily . . . . The phrase pro bono publico suggests meaningfully that distribution of this resource should be made with reference to the public benefit. . . .
>
> . . . [I]ndiscriminate assignment [of pro bono counsel] . . . demoralize[s] volunteers and diminish[es] an already inadequate resource. Injustice is not in short supply. Lawyers who volunteer their services hope to be employed in an effort to remedy injustice. If they find repeatedly that their services instead are devoted to giving the semblance of merit to undeserving complaints, then instead of giving their time through the courts they will offer it to agencies that make better use of it, or will not offer it at all.

Cooper, 877 F.2d at 172-73 (italics omitted).

## CONCLUSION

Plaintiff has not shown exceptional circumstances justifying the Court's resort to the PBR Program to try to find counsel willing to represent Plaintiff without compensation.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Counsel (Docket Entry 83) and his Counsel Request (Docket Entry 127) are **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 11, 2022